UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D N Y

★   SEP 13 2012   ★

LONG ISLAND OFFICE

-------------------------------------------------------------------X

JOSEPH BOBKER,

                 Plaintiff,

        -against-

AMERICAN GENERAL LIFE INSURANCE
COMPANY,

                                          Defendant.

-------------------------------------------------------------------X

MEMORANDUM AND ORDER

CV 10-5232

(Wexler, J.)

APPEARANCES:

      MARC M. COUPEY, ESQ.
      Attorney for Plaintiff
      11 East 36th Street, Suite 100B
      New York, New York 10016

      COZEN O'CONNOR
      BY: KENAN G. LOOMIS, ESQ.
      Attorneys for Defendant
      Suite 2200, Sun Trust Plaza
      303 Peachtree Street, NE
      Atlanta, GA 30308-3264

      COZEN O'CONNOR
      BY: PHILIP Y. KOUYOUMDJIAN, ESQ.
      Attorneys for Defendant
      45 Broadway Atrium, Suite 1600
      New York, NY 10006

WEXLER, District Judge

        This is an action brought by Plaintiff Joseph Bobker ("Plaintiff" or "Bobker") seeking

reinstatement of a universal life insurance policy terminated by the defendant issuer of the policy,

American General Life Insurance Company ("Defendant" or the "Insurance Company"). This

1

matter was commenced in New York State Court and was removed to this court on the basis of diversity jurisdiction. Presently before the court is Defendant's motion for summary judgment. For the reasons that follow, the motion is granted.

BACKGROUND

I.     The Parties and the Policy

Plaintiff is an individual residing within this District. He purchased the insurance policy that is the subject of this action (the "Policy") in 1994. The Policy was issued in the State of California when Plaintiff resided there, and insured the lives of two residents of that State. As explained by Plaintiff at his deposition, the Policy was obtained as part of a real estate transaction among the parties, and was aimed at securing certain tax benefits. The Policy is a "second to die" universal life insurance policy issued on the lives of two individuals in the amount of $8.6 million. The Policy amount becomes payable upon the earlier of: (1) the death of the survivor of the two named insureds; (2) surrender of the Policy, or (3) the maturity date of March 6, 2023.

As a universal life insurance policy, premiums made pursuant to the Policy were variable, and considered with respect to the cash value of the Policy. The cash value of the Policy was credited, on a monthly basis, with variable rates of interest. The rate of interest was guaranteed to fall no lower than 4%. Although the interest rate at the Policy's inception was 8%, that rate has dropped over time.

Debited from the cash value of the Policy is the "cost of insurance" ("COI"), as well as any costs and fees associated with maintenance of the Policy. The latter two costs are agreed to be minimal, and the main cost associated with maintenance of the Policy is the COI. For the Policy to remain in effect, the cash value of the Policy was required to be at least equal to the

2

COI, which was equal to the Policy's surrender value. Thus, if the cash value amount was sufficient to cover the COI, premiums were not required to be paid. In the event, however, that the cash value fell below the COI, a premium payment bringing the cash value up to the COI was required to be made. In the event such a premium payment was not made, the Policy would not automatically fall into lapse and be cancelled. Instead, a grace period would take effect prior to lapse of the Policy. Within that grace period, the holder of the Policy would be required to make a payment equal to two times the COI to avoid cancellation.

The Policy provides that in the event of a lapse and subsequent cancellation, the Policy could be reinstated within a five year period. Such reinstatement, however, requires payment of all outstanding COI charges, a two month premium payment, and evidence of insurability. This last requirement requires the insureds to undergo medical evaluation prior to reinstatement.

II.     Plaintiff's Payments, the Lapse and Cancellation of the Policy

The initial annual COI of the Policy was $175,000. The Policy provides, and Bobker recognized, that as the insureds aged, the COI, which was calculated on a monthly basis, was subject to increases in order to keep the Policy in effect. During the early years of the Policy, between 1995 and 2004, the annual premium payments were between $40,000 and $80,000. Thereafter, between the years 2005 through 2008, yearly premiums rose dramatically. For example, in 2007, Bobker paid a yearly premium in excess of $180,000. In 2008, that number rose to approximately $285,000.

Before the court are records of payment, several emails spanning a period of months between Bobker and an Insurance Company representative, as well as other correspondence between the parties regarding demands for and payment made between late 2008 and 2009. As

3

these documents, discussed in detail below demonstrate, Bobker began having difficulty meeting COI payments beginning in late 2008.

As was his practice during the time that the Policy was in effect, Bobker consulted with Kimberly Patterson, one of Defendant's Consumer Affairs Analysts ("Patterson") on a regular basis, to determine the amount required to be paid to keep the Policy in effect. During the early years of the Policy, these consultations took place via telephone and written correspondence. Later, Bobker consulted with Patterson as to amounts due via email. It was the parties' practice that Patterson would tell Bobker the amount due to keep the Policy current, and Bobker would make payments pursuant to Patterson's direction. Bobker testified at his deposition that it was his practice to rely on amounts quoted by Patterson in order to make proper payment and keep the Policy in effect.

In September of 2008, Bobker made a payment of $49,000 to cover the COI for September and October of 2008. In December of 2008, Bobker was advised by Patterson, via an email dated December 23, 2008, that a payment of $14,500 would be sufficient to cover the months of November and December of 2008. The record reflects a $14,500 payment made by Bobker in late December of 2008. Shortly thereafter, on January 5, 2009, Patterson sent an email to Bobker contradicting her earlier indication that a single payment of $14,500 would be sufficient to cover both November and December of 2008. Instead she advised him that a payment of approximately $17,000 was required to cover the December 2008 COI. The December 2008 COI payment was not made.

It is undisputed that the final payment Bobker made toward the Policy was a February 2009 single payment of $6,500. In light of the fact that Bobker had not paid any amount after

4

that date, Patterson advised Bobker that the $6,500 payment was insufficient to cover the COI due for even December of 2008, and that therefore, as of February 6, 2009, the Policy had lapsed. This lapse was communicated to Bobker by way of a letter dated February 5, 2009, entitled "Notice of Termination."

Shortly thereafter, Bobker sent an email to Patterson referring to the termination notice, stating that the Insurance Company "got the check," and that he was told that he had until March 6, 2009 to make further payment. He asked for reconfirmation that the Policy remained in effect. Patterson responded to the email on February 20, 2009, stating, as she had set forth in her January 2009 email, that approximately $17,000 was due no later that February of 2009, and that the payment of $6,500 was insufficient to cover the December 2008 COI. Therefore, Patterson sated, that the Policy had, indeed, lapsed.

On March 8, 2009, Bobker sent an email to Patterson, attempting to explain his position as to why he had made a payment of $6,500, and the reason he believed that the Policy should still be in effect. Specifically, Bobker stated that after seeking a January 2009 extension of time in which to pay his COI, he called the Insurance Company's customer services representative at a toll-free telephone number. That number was provided by Patterson in an email dated January 27, 2009. Bobker told Patterson that he was instructed by a woman representing the Insurance Company that he could make monthly payments of $6,331.33 to keep the Policy current. Bobker explained at his deposition that he received the instruction regarding this payment from a company representative located in Manila. He testified that he was quoted the lower amount in response to his request to lower his monthly payments. Bobker could not identify the woman who told him to pay the lower amount, and received no written confirmation that such payment

5

would be sufficient to keep the Policy in effect. In any event, Bobker states that he rounded the amount quoted to $6,500 for the February payment, made that payment, and assumed that monthly payments of $6,500 would be sufficient to keep the Policy active.

In addition to setting forth his explanation as to why he made a $6,500 payment, and his understanding that such payment was sufficient, Bobker's March 8, 2009, email also states his agreement with Patterson that once the Insurance Company verified what had occurred, Patterson would "tell me what amount is due, credit the $6,500 towards it, and reinstate the policy once you receive the check."

On April 3, 2009, Patterson responded to Bobker's March 8, 2009 email, explaining why monthly payments of $6,500 would not be sufficient to keep the Policy in effect. Specifically, Patterson's email states that as of March of 2009, the monthly COI increased to approximately $18,700. She further stated that in order to reinstate the Policy, a payment in the amount of approximately $81,000 was required to be made, no later that April 17, 2009. This amount reflected monthly unpaid COI payments from December of 2008. Patterson referred to the offer extending the payment date for the past due months through April of 2009, as a one time exception to normal reinstatement requirements, and that no further extensions would be granted.

On April 7, 2009, Bobker responded to Patterson's April 3, 2009, email requesting a fourteen day extension of time in which to make payment. Importantly, Bobker made no reference to the sufficiency of a $6,500 monthly payment at that time. Instead, he requested only an extension of time in which to make payment. The next day, Patterson agreed to the requested extension via email, stating that payment must be received by April 30, 2009.

Patterson and Bobker corresponded via email prior to the April 30, 2009 deadline, in

6

emails between April 20 and 24, 2009. Specifically, on April 20, 2009, Patterson wrote an email to Bobker detailing the calculation of the COI for the months December 2008 through April of 2009. That email reiterated the requirement of a payment of approximately $17,000 for the December 2008 COI. It also stated the following COI payments due: (1) $16,955 for each of the months of January and February of 2009 and (2) payments of $18,682 for each of the months of March and April of 2009. Thus, the total COI amounts due to cover the Policy through April of 2009 (less the amount of $6,500 held by the Insurance Company) was stated, again, to be approximately $81,000.

Patterson's email of April 20, 2009 again noted the February 2009 lapse of the Policy. She advised Bobker that the Policy would remain lapsed unless payment was received of the full amount due, no later than April 27, 2009. While this contradicted the earlier deadline of April 30, 2009, it did nothing to indicate to Bobker that monthly payment of $6,500 would be sufficient to cover the COI through April of 2009. Bobker was further advised that sufficient payment for May of 2009 would be due by July 5, 2009, and that there would be "no exceptions." Four days later, on April 24, 2009, Patterson wrote in an email apologizing for an earlier "typo," and advised Bobker that the monthly cost of insurance would be $18,682 until March of 2010, (and not the earlier quoted $16,955 for each of the months of January and February of 2009). He was also advised that as of March 2010, the cost to maintain the Policy would again increase.

Defendant has submitted the declaration of Debbie Sutton, its current Director of Customer Services ("Sutton"). Sutton sets forth all amounts due from December of 2008 through July of 2012. As of that date, the cost of reinstatement in $1,045,889.90. Additionally, the COI for 2012, is $30,220 per month.

7

III.     The Present Motion

The motion presently before the court is the Defendant Insurance Company's motion for summary judgment. Defendant argues that there is no question of fact as to whether Bobker has failed to make required payments under the Policy, and that it was therefore properly cancelled. It is further argued that, at this time, that the Policy can be reinstated only if Bobker makes full payment according to the Policy terms, and the insureds undergo new medical evaluations to determine insurability.

Bobker opposes summary judgment on the ground that questions of fact exist as to whether the payments he made were sufficient to keep the Policy in effect. In particular, Bobker argues that the Insurance Company is bound by Patterson's December 2008 statement that a single payment of $14,500 would be sufficient to keep the Policy active. He also argues that the confusing instructions regarding sufficiency of monthly payments in the amount of $6,500 precludes cancellation of the Policy. Finally, Bobker argues that Defendant did not properly cancel the Policy in accord with the notice requirements set by the New York State Insurance Law. After outlining relevant legal principles the court will turn to the merits of the motion.

DISCUSSION

I.     Legal Principles

A.     Summary Judgment Standards

To obtain summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, the party seeking judgment must demonstrate that "there is no genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Donohue v. Windsor Locks Bd.

8

of Fire Comm'rs, 834 F.2d 54, 57 (2d Cir. 1987). The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment. McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).

II.    Disposition of the Motion

The terms of the Policy are clear and, as set forth above, are not in dispute. Thus, there is no question that failure to make proper COI payments results in lapse and eventual cancellation of the Policy. Bobker knew that COI payments were not fixed, but were subject to and had been dramatically increased over time. Also clear to the court is that throughout the years that the Policy was in effect, Bobker relied on instructions provided by Patterson as to payments required to maintain the Policy. This is not disputed by Defendant. Indeed, the Insurance Company recognizes Patterson as an employee with authority to make decisions as to the terms of the Policy. Thus, if it were clear that Patterson had agreed, on behalf of the Insurance Company, to accept $14,500 as the COI payment for both November and December of 2008 and/or that it would accept monthly payments of $6,333.33 to keep the Policy in effect indefinitely, those agreements would be binding on Defendant. The documents before the court, however, reveal that this was not the case.

As noted above, Bobker made clear to Patterson the reasons he believed: (1) that a single payment of $14,500 was sufficient to cover both November and December of 2008, and (2) that monthly payments of $6,500 would keep the Policy in effect. Even assuming the truth of those statements, i.e., that Bobker was told by Patterson that $14,500 covered two months COI, and by a person in Manila, with authority to bind the Insurance Company, that monthly payments of$6,500 would be sufficient (presumably forever), those statements were clearly countermanded

9

by Patterson.

Patterson made clear, time and again, the monthly COI charges required to keep the Policy in effect. Those charges did not ever include a two-month fee of $14,500. Nor did they indicate that Bobker could keep paying only $6,500 monthly to maintain the Policy.

Bobker admits that he relied on Patterson as the individual who had the final say as to the payments necessary to keep the Policy in effect. Indeed, he testified repeatedly that until Patterson was assigned to his account, there was continual confusion regarding the amount required to be paid to maintain the Policy. Once Patterson was assigned to his account however, Bobker testified that he finally had a point of contact upon which he could rely. Thus, Bobker testified that over the years, when Patterson quoted a COI payment to Bobker, he was confident that the amount was correct. He always paid the amount quoted by Patterson, and the Policy remained in effect. Indeed, in his March 2009 email Bobker told Patterson that he was awaiting her response as to the amount due to keep the Policy in effect. When Patterson responded with an amount that was far in excess of the $6,500 paid by Bobker, he did not pay the amount. Instead, he simply ignored Patterson's instructions, allowing the Policy to lapse. As noted, Bobker has made no payment under the Policy since February of 2009.

In light of the foregoing, Bobker raises no plausible issue of fact as to the sufficiency of his payments under the Policy. When he failed to make the payments requested by Patterson, even after receiving several clarifications and extensions of time, the Policy lapsed and was cancelled according to its terms. Under these circumstances, Defendant is entitled to summary judgment dismissing the claim that the Policy was wrongfully cancelled and should be reinstated.

Finally, Bobker's argument regarding the application of Section 3211 of the New York

10

State Insurance Law requires no different result. As stated there, the law applies only to insurance "delivered or issued for delivery in this state." N.Y. Ins. L. §3211(a)(1). The statute has no application where, as here, the policy was issued and delivered in the State of California.

## CONCLUSION

Defendant's motion for summary judgment is granted. The Clerk of the Court is directed to terminate all motions pending herein and to close the file in this case.

SO ORDERED:

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Central Islip, New York
September 13, 2012